**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, John Remick-Cook, being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of a criminal complaint, charging Demetrius MOORE with a violation of 18 U.S.C. § 922(g)(1), Possession of a Firearm or Ammunition by a Felon.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, and have been since March of 2015. As a part of my training with the ATF, I graduated from the Federal Law Enforcement Training Center, Criminal Investigator School, located in Glynco, Georgia.  I also graduated from the ATF Special Agent Basic Training Academy, located in Glynco, Georgia, in February of 2016. I am currently assigned to the ATF Cleveland, Field Office where I am responsible for conducting criminal investigations in the Northern Judicial District of Ohio. Prior to my current assignment in my career with ATF, I have been assigned to the Akron, Ohio, Cincinnati, Ohio and Memphis, Tennessee Field Offices.

3.      Prior to my employment with ATF, I was a member of the Metropolitan Police Department in Washington D.C. from December of 2008 to March of 2015. I have received additional training in several areas of law enforcement, including but not limited to firearms investigations, gang investigations, narcotics interdiction and investigation among others.

4.      My formalized education prior to law enforcement includes a Batchelor's degree from the University of New Hampshire in Sociology and Justice Studies.

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers and witnesses. This affidavit is

intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

6. The following events occurred within the Northern District of Ohio, Eastern Division.

7. On March 4, 2026, at approximately 6:36 p.m., in the area of Shalersville, Ohio, on Interstate 80 west, Ohio State Highway Patrol (OSP) officers conducted a stop of a black 2025 Cadillac Escalade with Ohio license plate KSW-9317, registered to Trustful Solutions Services (hereinafter "the Escalade"), for excessive and illegal window tint. Demetrius MOORE was identified as the lone occupant. MOORE provided his Ohio Driver's License, registration and insurance card to the OSP officer.

8. According to the Ohio Secretary of State, Trustful Solutions Services is an LLC incorporated by Cortney Weaver. Investigators have learned that MOORE shares a child with Weaver.

9. The officer asked MOORE to exit the Escalade and he complied. MOORE was holding a wallet in his hand. The officer asked MOORE if he had any firearms and he said he did not. The officer conducted a consensual search of MOORE's person and no weapons were found. MOORE was not handcuffed but placed in the back of an OSP vehicle.

10. OSP deployed a certified drug detection canine on the Escalade. The canine alerted to the odor of an illegal drug coming from the Escalade. The officer advised MOORE about the positive canine alert, and asked MOORE if there were illegal narcotics in the Escalade. MOORE replied that there should not be any narcotics in the Escalade. At approximately 6:42 p.m., officers initiated a probable cause search of the Escalade.

11.     At approximately 6:43 p.m., while officers were searching the Escalade, a camera in the back of the OSP vehicle captured MOORE removing a stack of bills from his right pants pocket. The bills appeared to be fresh and banded together with rubber bands or a bank strap. MOORE took some of the bills and put them in his left pants pocket. MOORE then counted the stack of bills, folded them in half, placed them in his wallet, and then put the wallet in his right pants pocket. The denominations of the bills could not be observed, but it appears to be several thousand dollars. MOORE is currently on federal supervised release through the Northern District of Ohio.

12.     The officer returned to the OSP vehicle where MOORE was located. MOORE told the officer that the Escalade was his "kid's mother's car." The officer advised MOORE that he believed MOORE intentionally placed the Escalade into "valet mode", thereby locking the glove box. MOORE denied putting the Escalade into valet mode and said he did not know the code to unlock valet mode. When asked by the officer, MOORE said he had been in trouble before and was currently on federal parole. MOORE told the officer he could make a phone call in attempt to obtain the code to unlock valet mode.

13.     The officer subsequently returned with one of MOORE's cell phones. At approximately 6:52 p.m., MOORE made a phone call to "his son's mother" in attempt to obtain the unlock code. A female answered the call and advised she did not know the code.

14.     At approximately 6:53 p.m., while in the backseat of the OSP vehicle and not in the presence of an officer, MOORE made a Facetime call to a female. MOORE said, "What up Cort?" MOORE told the female that they (officers) were going to break into the glove box.

15.     At approximately 6:54 p.m., MOORE made another Facetime call to another female. MOORE stated, "So I'll call you if they take me to jail." The officer subsequently

returned to speak with MOORE. MOORE told the officer that he does not drive the Escalade and just "hopped in it real quick" to drive down to get the van. It appeared that MOORE was on the same Facetime call during his conversation with the officer. MOORE then told the female that the officers were about to break into the glove box. The female asked, "You in your truck?" (referring to the Escalade). MOORE replied, "Yeah." MOORE stated he would call the female back and the call ended.

16. At approximately 6:57 p.m., while in the backseat of the OSP vehicle and not in the presence of an officer, MOORE made a Facetime call to a female and stated, "They about to break into the glove box." A couple of minutes later, MOORE made a statement to the female where the word "pistol" can be heard. The female asked MOORE what he said. MOORE stated, "There's a gun in the glove."

17. At approximately 7:07 p.m., the OSP officer showed MOORE the cruiser's video recording (showing MOORE sitting in the back of the OSP vehicle saying "there's a gun in the glove"). MOORE was still connected to a Facetime call at this time when listening to the recording. After seeing the recording of himself, MOORE stated, "Damn." At approximately 7:08 p.m., MOORE made a Facetime call to a female and said he was probably going to jail

18. At approximately 7:09 p.m., MOORE made a Facetime call to a female and told the female that they (OSP officers) said he admitted on camera to there being a gun in the Escalade. The female stated, "Did you admit it?" MOORE replied, "Yeah cause they got the camera in the car."

19. At approximately 7:10 p.m., the officer was able to open the Escalade's glove box. Inside the glove box, was a black Taurus, model G3, 9x19mm pistol, bearing serial number ABD466213, with a loaded magazine (approximately 17 rounds) and a round loaded in the

chamber. Several documents were located within the same glove box where the pistol was recovered, including mail from multiple sources addressed to Demetrius MOORE,

20.     At approximately 7:30 p.m., MOORE was released from OSP custody, pending potential charges at a later date.

21.     Based on my training and experience, the Taurus, Model G3, 9x19mm pistol with serial number ABD466213 was manufactured outside the State of Ohio, and therefore necessarily traveled in interstate commerce prior to MOORE possessing it in the state of Ohio.

22.     MOORE is prohibited from possessing a firearm under federal law due to the following prior felony convictions, which were punishable by more than one year of imprisonment:

   a.  Possession with Intent to Distribute Cocaine, in NDOH case 1:07-CR-134, on or about November 13, 2007, resulting in a 120-month prison sentence;

   b.  Felon in Possession of Firearm, Wire Fraud, and Theft of Government Property, in NDOH case 1:21-CR-379-PAB, on or about October 28, 2022, resulting in a 42-month prison sentence.  MOORE is currently on supervised release from this sentence.

Page **5** of **6**

## CONCLUSION

23. Based on the facts set forth above, there is probable cause to believe that on or about March 4, 2026, in the Northern District of Ohio, Eastern Division, Demetrius MOORE possessed a firearm as a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1).

Respectfully submitted,

John Remick-Cook
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and
Explosives

Sworn to via telephone after submission by
reliable electronic means. Fed. R. Crim. P. 4.1.

 Amanda M. Knapp, United States Magistrate Judge

DATE  7/6/2026